UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

FRANKLIN B. BROWN,

                        Petitioner,

            -v.-                                    9:00-CV-0290
                                                    (GLS/GHL)
GEORGE B. DUNCAN, Superintendent,
Great Meadow Correctional Facility,

                        Respondent.

_____

APPEARANCES:                            OF COUNSEL:

FRANKLIN B. BROWN
Petitioner, *Pro Se*
94-B-0769
Southport Correctional Facility
P.O. Box 2000
Pine City, New York 14871-2000

HON. ELIOT L. SPITZER                   SENTA B. SUIDA, ESQ.
Attorney General for State of New York  Assistant Attorney General
Counsel for Respondent
615 Erie Boulevard West, Suite 102
Syracuse, New York 13204-2455

GEORGE H. LOWE, UNITED STATES MAGISTRATE JUDGE

**ORDER AND REPORT-RECOMMENDATION**

        This action has been referred to the Court for Order and Report-Recommendation by the

Honorable Gary L. Sharpe, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(B)

and Local Rules N.D.N.Y. 72.3(c).

        Petitioner Franklin B. Brown ("petitioner") was convicted in Onondaga County Court on

June 27, 1996, following a jury trial, of burglary in the third degree.[1]  Dkt. No. 1 at 1.  Petitioner

now challenges the lawfulness of his conviction pursuant to 28 U.S.C. § 2254.  Dkt. No. 1.  An

Order was issued pursuant to the Rules Governing Section 2254 cases in the United States

District Courts, 28 U.S.C. fol. § 2254, directing service of the petition.  Dkt. No. 3.  The Order

further required the service of a response by the respondent.  *Id.*  The respondent filed an answer

and memorandum of law, requesting dismissal of the petition.  Dkt. Nos. 7-8.  Respondent has

included the pertinent state court records.[2]  Petitioner filed a memorandum of law in opposition

to respondent's answer.  Dkt. No. 17.  Petitioner has also filed a motion to amend his petition.

Dkt. No. 24.

On March 2, 1994, petitioner was found guilty, after a jury trial, of third degree burglary,

petit larceny, criminal possession of stolen property in the fifth degree, and criminal mischief in

the fourth degree.  Dkt. No. 1 at 4.  On April 1, 1994 a combined persistent felony offender

hearing and sentencing hearing was held.  After this combined hearing, petitioner was

determined to be a persistent felon and thereafter sentenced to a term of 20 years to life

imprisonment for the burglary conviction.  *Id.*  Petitioner was also sentenced to concurrent

sentences of one year each for each of the misdemeanor convictions.  *Id.*

On February 15, 1996, the Court of Appeals vacated the third degree burglary conviction

and remanded the case to the trial court for a new trial regarding the burglary conviction.  *Id.* at 5;

---

[1] This was petitioner's second trial regarding the burglary charge.  As will be discussed more
fully below, petitioner was found guilty at his first trial of third degree burglary as well as petit
larceny, criminal possession of stolen property in the fifth degree, and criminal mischief in the
fourth degree.  On appeal, the three misdemeanor convictions were affirmed and the conviction for
burglary was vacated and remanded for new trial on the matter.

[2] The state court records submitted by respondent are listed on page 2 of the answer.

*see also People v. Brown*, 87 N.Y.2d 950 (N.Y. 1996).  The Court of Appeals affirmed the misdemeanor convictions.  *Id*.

A second trial was held in Onondaga County Court regarding the third degree burglary charge.  On June 27, 1996 petitioner was found guilty, after a jury trial, of burglary in the third degree.  Dkt. No. 1 at 1.  Petitioner was sentenced, as a persistent felon, to a term of twenty years to life imprisonment.  Petitioner filed an appeal from the June 27, 1996 conviction with the Appellate Division, Fourth Department, which affirmed.  *People v. Brown*, 256 A.D.2d 1110 (4th Dept. 1998).  The New York Court of Appeals denied leave to appeal on February 16, 1999. *People v. Brown*, 93 N.Y.2d 851 (N.Y. 1999).

Petitioner challenges the lawfulness of his conviction on the following grounds: (1) he was denied effective assistance of trial counsel; (2) the conviction is against the weight of the evidence; (3) the sentence was harsh and excessive; (4) the trial court erred in determining that petitioner was a persistent felon; (5) the trial court's *Sandoval* ruling was error; and (6) the trial court interjected itself into the trial, denying petitioner a fair trial.  Dkt. No. 1 at 5-9.

Respondent seeks dismissal of the petition on the grounds that: (1) petitioner was not denied effective assistance of counsel; (2) the evidence was sufficient to support the verdict; (3) petitioner's claim that his sentence was harsh and excessive is not cognizable upon federal habeas corpus review; (4) petitioner's claim that he was incorrectly sentenced as a persistent felon is not cognizable upon federal habeas review; (5) the trial court's *Sandoval* ruling is not available for federal habeas review; and (6) petitioner's claim that the trial court committed misconduct is without merit.  Dkt. No. 8.

For the following reasons, this Court (1) orders that petitioner's motion to amend his

3

petition be denied and (2) recommends that the petition be denied and dismissed.

## I.   MOTION TO AMEND

Petitioner has submitted a motion to amend the original petition.  Dkt. No. 24.  By the

proposed amended petition, petitioner seeks to add a new claim upon which to challenge his

conviction.  Specifically, petitioner wishes to add a claim challenging his sentence and

conviction pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

Respondent opposes the motion to amend.  Respondent argues that the motion to amend

should be denied because (1) petitioner has not exhausted his *Apprendi* claim in state court and

(2) petitioner's motion is procedurally deficient in that he did not include a complete proposed

amended petition with his motion to amend as required by the Local Rules of the Northern

District of New York.  Dkt. No. 26.

### A.  Form of Motion

A motion to amend a pleading is governed by Rule 15(a) of the Federal Rules of

Civil Procedure.[3]  Local Rule 7.1(a)(4) of the Local Rules of Practice of this District provides, in

pertinent part:

> An unsigned copy of the proposed amended pleading must be
> attached to a motion brought under Fed. R. Civ. P. 14, 15, 19-22.
> Except as provided by leave of court, the proposed amended
> pleading must be a complete pleading which will supersede the
> original pleading in all respects. No portion of the prior pleading
> shall be incorporated into the proposed amended pleading by
> reference.
>
> The motion must set forth specifically the proposed amendments

---

[3]  Rule 11 of the Rules Governing Habeas Corpus Proceedings permits the application of the
Federal Rules of Civil Procedure to habeas proceedings "to the extent they are not inconsistent with
these rules...."

and identify the amendments in the proposed pleading....

One of the purposes of the requirement that motions to amend be accompanied by a copy of a **complete** proposed amended petition is to ensure that all of the allegations asserted against the respondent(s) named therein are contained in a single document, thereby reducing the likelihood that a party will overlook one or more allegations against him.  Moreover, this requirement eliminates the confusing nature of "piecemeal" amended pleadings. *See Rodriguez v. Tedford*, No. 95-CV-745, slip op. at 2 (N.D.N.Y. Nov. 7, 1995) (Hurd, M.J.).

Petitioner has attached a document entitled "Proposed Amended Petition Pursuant to Rule 15(A)[a] of the F.R.C.P."  Dkt. No. 24, Ex. C at 13-18.  In this proposed amended pleading, petitioner sets forth the additional ground he would like to raise and legal citations to cases which petitioner claims support his argument for this newly proposed ground for relief.  There is no indication in petitioner's papers that this new ground has been exhausted in the state courts.  Additionally, petitioner does not set forth facts in support of either his original grounds for relief or the new ground that he seeks to add.  The "Proposed Amended Petition Pursuant to Rule 15(A)[a] of the F.R.C.P" does not contain the information necessary to be considered a **complete** pleading.[4]  Because petitioner failed to include an unsigned copy of a complete proposed amended petition along with his motion to amend, his request to amend could be denied for this reason alone.

---

[4] Rule 2 of the Rules Governing Habeas Proceedings provides, in part:

(c) Form of Petition.  The petition ... shall specify all the grounds for relief which are available to the petitioner and ... shall set forth in summary form the facts supporting each of the grounds thus specified....

5

**B.  Futility of Motion**

Section 28 U.S.C. 2242 provides that a writ of habeas corpus "may be amended or supplemented as provided in the rules of procedure applicable to civil actions."  The Second Circuit has held that the standard for granting or denying a motion to amend a habeas petition shall be controlled by Rule 15 of the Federal Rules of Civil Procedure which provides that "leave to amend shall be freely given when justice so requires." *Littlejohn v. Artuz*, 271 F.3d 360, 362 (2d Cir. 2001).

Leave will be denied when an amendment is offered in bad faith, would cause undue delay or prejudice, or would be futile.  *See Foman v. Davis*, 371 U.S. 178, 182, (1962); *see also Jones v. New York State Division of Military and Naval Affairs*, 166 F.3d 45, 50 (2d Cir. 1999) (district court may properly deny leave when amendment would be futile); *Electronics Communications Corp. v. Toshiba America Consumer Prods., Inc.*, 129 F.3d 240, 246 (2d Cir.1997) (same).

Petitioner is trying to add to his petition a claim pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  Petitioner claims that he was sentenced as a persistent felony offender after a persistent felony offender hearing was held before the Judge alone.  He claims that *Apprendi* requires that the facts supporting this enhancement should have been placed before the jury.[5]

New York State has two sentence-enhancing statutes for persistent felony offenders.  The first statute applies to persistent **violent** felony offenders.  N.Y. Penal Law § 70.08.  Section 70.08 requires a **mandatory** enhancement of a sentence for any person convicted of a **violent**

---

[5] *Apprendi* held that other than the fact of a prior conviction, any fact that increases a penalty above the statutory maximum must be presented to a jury.

felony who was previously convicted of two or more previous **violent** felonies.[6]

The second statute applies to persistent felony offenders, but the felonies need not be violent felonies.  N.Y. Penal Law §70.10.  Under § 70.10, a persistent felony offender is a person convicted of a felony who is shown to have two or more prior felony convictions.  A person found to be a persistent felon under § 70.10 **may** receive an enhanced sentence if, after the sentencing court conducts a hearing, the sentencing court "is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and lifetime supervision will best serve the public interest."  N.Y. Penal Law 70.10(2).  Thus, unlike the enhancement under § 70.08, which is mandatory, the enhancement under § 70.10 is **permissive**.

A review of the transcript of petitioner's "Persistent Felon Hearing, Plea and Sentence" indicates that petitioner's enhancement was based upon two prior felonies **as well as** the history and character of the defendant.  *See* Transcript, Persistent Felon Hearing, Plea and Sentence at 14-16.  Thus, petitioner's sentence was enhanced pursuant to New York's **permissive** felony offender statute.  Petitioner argues that because his sentence was enhanced under the permissive statute, after a hearing held before the Judge alone, this enhancement violated his constitutional rights under *Apprendi*.  Several Courts in this Circuit have determined that New York's permissive persistent felony offender statute violates *Apprendi*.  *See Brown v. Greiner*, 258 F. Supp.2d 68, 93 (E.D.N.Y. 2003);  *Besser v. Walsh*, No. 02 Civ. 6775, 2003 WL 22801952 (S.D.N.Y. Nov. 26, 2003).  These decisions, however, do not help petitioner.

In this Circuit, *Apprendi* has been determined to be **not retroactive** on certain collateral

---

[6] A violent felony is defined at N.Y. Penal Law § 70.02.

review to convictions final before *Apprendi* was decided.  *See Coleman v. U.S.*, 329 F.3d 77, 82

(2d Cir. 2003) (*Apprendi* is a new criminal procedural rule that does not apply retroactively to

initial 2255 motions for habeas relief); *Forbes v. U.S.*, 262 F.3d 143 (2d Cir. 2001) (*Apprendi* is

a new rule of constitutional law which has not been made retroactive by the Supreme Court to

second or successive § 2255 motions for relief ).[7] The issue of whether *Apprendi* retroactively

applies to initial § 2254 habeas petitions filed by state prisoners has not been squarely addressed

by this Circuit.[8]

  While this Circuit has not squarely addressed *Apprendi*'s retroactive application in § 2254

cases, several Circuits that have addressed the issue have found that *Apprendi* does **not** apply

retroactively in § 2254 habeas cases. *See, e.g., Reynolds v. Cambra*, 290 F.3d 1029, 1030 (9th

Cir. 2002); *Thompson v. Hill*, No. 01-35479, 2002 WL 1378958 at *2 (9th Cir. June 25, 2002);

*Meriweather v. Maass*, No. 01-35375, 32 Fed. Appx. 973, 973, 2002 WL 5704323 at *1 (9th Cir.

Apr. 16, 2002); *Hunter v. Hill*, No. 01-35416, 31 Fed. Appx. 566, 566, 2002 WL 464749 at *1

(9th Cir. Mar.11, 2002); *Hartman v. Lee*, 283 F.3d 190, 192 n.2 (4th Cir. 2002); *United States v.*

*Sanchez-Cervantez*, 282 F.3d 664, 668 (9th Cir. 2002) ("[T]he *Teague* retroactivity doctrine

applies to both § 2254 and § 2255 habeas petitions" and *Apprend*i does not "fit within one of

*Teague*'s exceptions," and thus does not have retroactive effect.); *Burch v. Corcoran*, 273 F.3d

---

[7] The *Forbes* Court, citing *Tyler v. Cain*, 121 S.Ct. 2478 (2001) denied Forbes leave to file a second § 2255 motion because "no pronouncement has yet been made by the Supreme Court on the retroactivity of Apprendi." *Forbes*, 262 F.3d at 146.

[8] In *Forbes*, the Court noted in a footnote that its decision "is made in the context of a second or successive § 2255 motion for relief and we make no intimation as to the retroactive effect of Apprendi on first petitions under either § 2255 or § 2254." *Forbes*, 262 F.3d 143 at n.5. Subsequently, *Coleman* (discussed *supra*) determined that *Apprendi* was not retroactive to initial § 2255 motions.

577, 584 (4th Cir. 2001), *cert. denied*, 535 U.S. 1104 (2002).

In order to decide whether *Apprendi* should be applied retroactively to the present § 2254 petition, the Court will refer to *Teague v. Lane*, 489 U.S. 288, 310 (1989) which held that a habeas petitioner generally cannot benefit from a new rule of criminal procedure announced after his conviction has become final on direct appeal. *Teague* requires the Court to conduct a step-by-step inquiry into three matters: first, the date on which petitioner's conviction became final; second, whether the rule of constitutional criminal procedure on which petitioner relies is "new"; and third, if the rule is new, whether it falls within one of the two narrow exceptions to the general rule against the retroactive application of new rules to collateral challenges to convictions.

A judgment of conviction becomes final at the conclusion of the ninety days during which the party could have sought certiorari in the United States Supreme Court. *Hughes v. Irvin*, 967 F. Supp. 775, 778 (E.D.N.Y. 1997) (citing Rule 13 of Rules of the Supreme Court of the United States); *Allen v. Hardy*, 478 U.S. 255, 258 n. 1 (1986) (decision becomes final "where the availability of appeal [is] exhausted, and the time for petition for certiorari ha[s] elapsed."). Petitioner's conviction became final on May 16, 1999, prior to *Apprendi*, which was decided on June 26, 2000.

Next, this Court must determine whether the holding in *Apprendi* constitutes a "new rule" of criminal procedure. The Second Circuit has stated that "[i]n light of the dramatic changes wrought by *Apprendi*, it unquestionably announced a new rule of law." *Coleman*, 329 F.3d at 83 (citing *United States v. Moss*, 252 F.3d 993, 997 (8th Cir.2001), *cert. denied,* 534 U.S. 1097 (2002) ("*Apprendi* is obviously a 'new rule'"); *Jones v. Smith,* 231 F.3d 1227, 1236 (9th

Cir.2000) ("*Apprendi* certainly established a new rule"); *McCoy v. United States,* 266 F.3d 1245, 1256 (11th Cir.2001), *cert. denied,* 536 U.S. 906 (2002) ("*Apprendi* established a new rule"); *see also Forbes v. United States,* 262 F.3d at145 (assuming that *Apprendi* announced a new rule); *Goode v. United States,* 305 F.3d 378, 382-85 (6th Cir.), *cert. denied,* 123 S.Ct. 711 (2002) (same); *United States v. Mora,* 293 F.3d 1213, 1218-19 (10th Cir.), *cert. denied,* 123 S.Ct. 388 (2002) (same); *United States v. Sanders,* 247 F.3d 139, 147-51 (4th Cir.), *cert. denied,* 534 U.S. 1032 (2001) (same).  The *Coleman* Court also determined that the new rule announced in *Apprendi* was procedural in nature, not substantive, since it "did not effect a change in the meaning of a federal criminal statute."  *Coleman*, 329 F.3d at 87.

Since the rule announced in *Apprendi* is a new rule of criminal procedure, the Court therefore considers the final step under *Teague*.  This Court may only apply the *Apprendi* holding retroactively if the *Apprendi* rule falls "within one of the two narrow exceptions to the *Teague* doctrine."  *O'Dell*, 521 U.S. at 156-57.

The first of the two *Teague* exceptions relates to decisions that render certain acts non-criminal.  *Teague*, 489 U.S. at 307.  *Apprendi* did not hold that an individual **cannot** receive additional punishment for any fact, but instead emphasized the procedural requirements that are to be followed for the establishment of such facts.  *See Goode*, 305 F.3d at 383-84 n.8 (holding that *Teague*'s first exception does not apply to *Apprendi*'s new rule); *Sanchez-Cervantes,* 282 F.3d at 668 (same); *McCoy,* 266 F.3d at 1256-57 (same); *Jones,* 231 F.3d at 1237 (same); *Sanders,* 247 F.3d at 148 (same); *Mora,* 293 F.3d at 1218 (same).  Thus, *Apprendi* cannot be retroactively applied to the present case under this exception.

"The second, even more circumscribed, exception permits retroactive application of

'watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding.'" *O'Dell v. Netherland*, 521 U.S. 151, 157 (1997) (citing *Teague*, 489 U.S. at  311) (other citations omitted)).  The Second Circuit has stated that "[c]learly ... *Apprendi* did not announce a 'watershed' rule." *Coleman*, 329 F.3d at 89 (citing *Goode,* 305 F.3d at 384-85 [holding that *Teague* 's second exception does not apply to *Apprendi* 's new rule]; *accord Curtis v. U.S.,* 294 F.3d 841, 843-44; *Mora,* 293 F.3d at 1218-19; *Sanchez-Cervantes,* 282 F.3d at 668-71; *McCoy,* 266 F.3d at 1257-58; *Moss,* 252 F.3d at 998-1001; *Sanders,* 247 F.3d at 149-51; *Jones,* 231 F.3d at 1237-38).

The Court finds that *Apprendi* should not be retroactively applied to the present petition, which challenges a state court conviction which became final before the Supreme Court decision in *Apprendi*, due to the clear weight of authority and the fact that (1) the Supreme Court has not clearly stated that *Apprendi* should be applied retroactively to § 2254 petitions and (2) *Apprendi* has been determined to not be retroactively applied to § 2255 motions, which are analogous to §2254 petitions.[9]

Thus, an amendment to allow inclusion of this claim is futile and the motion to amend is **denied**.[10]

---

[9] The Supreme Court has held that Sections 2254 and 2255 are functionally similar statutes dealing with different types of prisoners – state v. federal.  *Davis v. U.S.*, 417 U.S. 333, 344 (1974).

[10] Petitioner also relies on *Ring v. Arizona*, 536 U.S. 584 (2002) in attempting to amend his petition.  *Ring* essentially extended the holding of *Apprendi* in capital cases.  The Supreme Court has held that the ruling in *Ring* is (1) a procedural rule and (2) not a watershed rule and is therefore not retroactive to convictions final before *Ring* was decided.  *Ring* was decided on June 24, 2002, three years after petitioner's conviction became final.

11

II.     **HABEAS PETITION**

    **A. Background**

The testimony adduced at trial reveals that on August 27, 1993 Phyllis Tassone was at

work at Tassone's North, a service station, and was responsible for closing the station on that day.

(Trial Transcript ("T.") 230).  At 5:00 p.m. Ms. Tassone locked and secured all of the doors and

windows, turned off the electricity at the main breaker box, turned on the alarm, and locked the

front door.  (T.231).  Ms. Tassone also emptied the larger bills from the cash register and left the

register drawer "open just a little."  (T.232).  Ms. Tassone testified that there were no windows

broken when she left at 5:00 p.m. (T.232).  Ms. Tassone testified that she did not know petitioner

and she never gave him permission to do anything in the garage. (T.233).

Officer Dennis Flynn testified that he was working for the Syracuse Police Department on

August 28, 1993 and was on duty at 2:13 a.m. when he responded to a burglary alarm at 1801

North Salina Street at Tassone's Citgo station.  (T.235-36).  Flynn, and other officers who had

arrived at the scene, looked over the building and one of the other officers found a broken window

in the back.  (T.237).  The owner arrived and let the officers into the building.  (T.238).  Flynn

went upstairs where he found a black male crouched down on a catwalk that overlooks the east

side bays of the garage.  (T.238).  Flynn described the black male as thin, muscular tone, about

5'8" or 5'9" tall. (T.239).  Flynn handcuffed him and took him downstairs.  (T.239).  Flynn then

went back upstairs to search the area and found no one else there.  (T.239).  Flynn took pictures of

the scene and identified at trial a picture he took of the cash register which he said was wide open

and empty.  (T.242).  Flynn also collected evidence, including $91.60 that was recovered from the

petitioner.  (T.246).  Flynn identified petitioner as the man that he found on the catwalk in the

garage that night.  (T.247).

Vincent Tassone testified that he is the owner of a service station at 1801 North Salina Street.  (T.262).  The service station has a burglar alarm which was operating on August 27-28, 1993. (T.263).  Mr. Tassone left the service station at 4:00 p.m. on August 27, 1993.  (T.263). Consistent with his usual routine, he checked around the service station before he left and noted that there were no windows broken on that day.  (T.263).  At about 3:00 p.m. on August 27, 1993, he cashed out the register, leaving some small bills and change in it.  (T.264).  He testified that the register is left open because the station was broken into once before and the register was broken open.  (T.264).  To prevent another broken register, they just leave it open.  (T.264).  Mr. Tassone received a call that the burglar alarm went off and went to the station, which was surrounded by police. (T.265).  He let the police in, turned on the lights, and turned off the alarm. (T.266).  Mr. Tassone said that there were a couple of police near the back door of the station and when he went near there, he noticed that there was a window laying on the ground.  (T.266).  The window was intact when he left the service station at 4:00 p.m. on August 27, 1993. (T.267).  Police asked Mr. Tassone to check the register, which was empty.  (T.269).  He testified that the register was wide open, but they only leave it open about three or four inches. (T.269).  Mr. Tassone identified petitioner as the man the police found on the catwalk in his station. (T.278).

Officer Joel Cordone testified that he was employed by the Syracuse Police Department and was on patrol at 2:00 a.m. on August 28, 1993 when he responded to a burglary alarm at 1801 North Salina Street. (T.292-93).  Upon arrival, he checked the outside of the building and noticed damage to a window on the south garage door. (T.294).  Once the owner arrived, Officer Cordone entered the building and checked for suspects downstairs, but found none. (T.294-95).  When

13

Officer Flynn announced from upstairs that he had someone in custody Cordone went to the bottom of the stairs and took custody of the suspect. (T.296).  Officer Cordone identified the petitioner as the suspect taken into custody. (T.296-97).  Cordone searched petitioner at the scene and recovered approximately $91.40 sticking out of petitioner's waistband. (T.297-98).  Officer Cordone pat searched petitioner, read him his Miranda rights, and questioned him. (T.299).  Cordone testified that petitioner told him that he was alone in the service station, that he crawled in through a window, and that the money he had in his possession came from inside the station. (T.301-02).

Martin Matarrese testified on behalf of the petitioner, stating that he has known him for 10 to 20 years. (T.320).  Mr. Matarrese lent petitioner his bike prior to August 27, 1993. (T.320-21).  Matarrese testified that he told petitioner that the bike had a slow leak in the front tire and that petitioner could fix it if he wanted to. (T.321).

Petitioner testified at trial that on August 27, 1993 he went to a bachelor party and drank two or three forty ounce beers and smoked some marijuana.  (T.334-35).  He left the party and rode the bike heading to Mr. Matarrese's house. (T.335).  He noticed that his bike tire was losing a lot of air. (T.336).  He pulled up to Tassone's service station, the first station he came to, and tried to use the air pump outside. (T.337).  The air pump would not work because there was no hose attached to it. (T.337).  He peered in a window of the station to see if there was a hose, noticed the window was loose and pushed it in. (T.338).  He went into the building, noticed the cash register was open, so he took the money. (T.338).  Petitioner heard the police arrive, put the window back in place and ran upstairs. (T.338).  Petitioner testified that he went into the building "intending to get the hose so that he could fill [his] tire." (T.339).  Petitioner admitted that he had no right to be

in the service station or take the money. (T.342).  Petitioner also admitted to lying on an

employment application.  On cross-examination petitioner testified that he never made any

admissions to Officer Cordone.  (T.346).

### B. Discussion

#### 1. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal

court may not grant habeas relief to a state prisoner on a claim unless the state court adjudicated

the merits of the claim and such adjudication either

> 1) resulted in a decision that was contrary to, or involved an
> unreasonable application, of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> 2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.

28 U.S.C. § 2254(d); *see also Miranda v. Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003); *Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001).

The petitioner bears the burden of proving by a preponderance of the evidence that he is "in

custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. §

2254(a); *Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir. 1997); *Rivera v. New York*, 2003 WL

22234679, at *3 (S.D.N.Y. Aug. 28, 2003).  The AEDPA also requires that "a determination of a

factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have

the burden of rebutting the presumption of correctness by clear and convincing evidence."  28

U.S.C. § 2254(e)(1); *see also Boyette*, 246 F.3d at 88 (quoting § 2254(e)(1)).

#### 2. Ineffective Assistance of Counsel

The first claim raised is that trial counsel was ineffective because counsel submitted only

15

one motion, a pretrial omnibus motion, which failed to address petitioner's intent to commit

burglary.  Dkt. No. 1 at 5-6.  Petitioner also claims that his attorney did not interview petitioner's

only witness prior to trial and "did not familiarize himself with the pertinent facts or applicable

law."  *Id*.  Petitioner also claims that his attorney was under the influence of crack cocaine during

the trial, which clouded his judgment.  *Id.*

      To establish ineffective assistance of counsel, a petitioner must show both (1) that his

counsel's representation fell below an objective standard of reasonableness, measured in light of

the prevailing professional norms, and (2) resulting prejudice -- that is, a reasonable probability

that, but for counsel's performance, the outcome of the proceeding would have been different.

*Strickland v. Washington*, 466 U.S. 668, 688-90 (1984); *see also Aeid v. Bennett*, 296 F.3d 58, 62-

63 (2d Cir. 2002).[11]  In other words, petitioner must demonstrate that his counsel's performance

was deficient and that, absent the deficient performance, the trial outcome would have been

different.  *Rosario v. Bennett*, No. 01 Civ. 7142, 2002 WL 31852827, at *27 (S.D.N.Y. Dec. 20,

2002) (citing *Strickland*, 466 U.S. at 687 and 694).

      Petitioner first claims that his trial counsel was deficient because he only made one pre-

trial motion and the motion did not address petitioner's intent when he entered Tassone's Service

Station on August 28, 1993 -- a critical element for a burglary conviction.  However, after the

prosecution rested, petitioner's attorney made an oral motion to dismiss the burglary charge for

failure of the prosecution to make a prima facie case on all of the elements. (T.315)  A discussion

ensued between the Court and the attorneys regarding the issue of intent.  The Judge determined

---

[11] In *Williams v. Taylor*, 529 U.S. 362(2000), the Supreme Court declared that "the rule set
forth in *Strickland* qualifies as "clearly established Federal law[.]" *Williams*, 529 U.S. at 391.

that intent was a question of fact to be determined by the jury.  Thus, the Court denied the motion. (T.315-16).  Petitioner has not shown that the result of his trial would have been different had counsel made any pre-trial motions addressing intent.

Additionally, petitioner contends that his representation was deficient because his counsel failed to adequately prepare his case, familiarize himself with the facts and law, or interview petitioner's sole witness prior to trial.  This contention is also without merit.  Petitioner has failed to specify what additional preparation counsel should have made or what evidence could have been discovered had counsel interviewed petitioner's sole witness prior to trial.  In addition, petitioner does not identify specific evidence or information that, if uncovered or used, might have led to a different outcome at his trial.  A claim of ineffective assistance of counsel based upon failure to investigate or interview witnesses fails when the allegations are conclusory and do not show what evidence could have been uncovered leading to a different trial outcome.  *Madarkin v. U.S.*, No. 95 Civ. 2052, 1997 WL 597085, at *1 (E.D.N.Y. Sept. 24, 1997); *see also, e.g., Polanco v. U.S.*, 99 Civ.5739, 2000 WL 1072303, at *10 (S.D.N.Y. Aug. 3, 2000) (failure to investigate claim not sufficient because petitioner "does not say precisely what counsel would have learned or how counsel would have learned it"); *Rosario*, 2002 WL 31852827, at *33 ("petitioner may not merely allege that certain unidentified witnesses 'might' have supplied relevant testimony, but must state exactly what testimony they would have supplied and how such testimony would have changed the result").  Petitioner's conclusory allegations that his counsel failed to adequately prepare his case or interview the sole witness prior to trial does not satisfy either prong of the *Strickland* test.

Petitioner's allegations that his trial counsel was using drugs during the trial is purely

conclusory. A review of the record at trial does not demonstrate that counsel's actions were in any way impaired. Finally, after trial but before sentencing, petitioner asked for and received a new attorney. The new counsel made a motion challenging prior counsel's effectiveness, alleging drug use. Sentencing and Motion Transcript, Jan. 17, 1996, at 3. The trial court concluded as follows: "I don't think the record will bear out any evidence that counsel was in anyway under the influence ... I was under no impression that counsel was behaving in anyway other than competently. " *Id*. at 6.

### 3. Conviction Against Weight of Evidence

Petitioner claims that the conviction was against the weight of the evidence. Dkt. No. 1 at 6. Essentially petitioner argues that intent, which is a requisite element of burglary in the third degree, was never proven beyond a reasonable doubt. *Id*. "Weight of the evidence review is a product of New York state statute and therefore merely a state law issue." *Wilson v. Supt., Attica Corr. Facility*, No. 9:00-CV-0767, 2003 WL 22765351, at *9 (N.D.N.Y. Nov. 24, 2003) (citing NY CPL § 470.15)(other citation omitted). "It is well established that habeas corpus review is not available for errors of state law." *Wilson*, 2003 WL 22765351, at *9 (citing *Estelle v. McGuire*, 502 U.S. 62, 67-69 (1991). Federal habeas relief is therefore not available to review a claim that challenges the weight of the evidence. *Hyde v. Shine*, 199 U.S. 62, 84 (1905) ("In the Federal courts ... it is well settled that upon habeas corpus the court will not weigh the evidence."); *Brown v. Superintendent*, No. 02 Civ. 4810, 2003 WL 1948803, at *4 (S.D.N.Y. Apr. 23, 2003) (citing *Maldonado v. Scully*, 86 F.3d 32, 35 [2d Cir. 1996] [other citation omitted]); *Cardena v. Giambruno*, No. 03CIV 3313, 2004 WL 239722, at *4 (S.D.N.Y. Feb. 10, 2004) (challenge to weight of evidence not cognizable upon federal habeas review); *Kearse v. Artuz*, 99 CIV. 2428,

2000 WL 1253205, at *1 (S.D.N.Y. Sept. 5, 2000) ("Disagreement with a jury verdict about the weight of the evidence is not grounds for federal habeas corpus relief").  Thus, to the extent that petitioner raises a claim regarding the "weight" of the evidence, it must be dismissed.

However, since petitioner is proceeding *pro se*, his claims must be liberally construed. *Montalvo v. Newton*, No. 98 Civ. 8665,  2001 WL 1399527, at *4 (S.D.N.Y. Mar. 23, 2001) (citation omitted).  Therefore, the Court will also consider petitioner to state a sufficiency of the evidence claim which is cognizable in federal habeas petitions.  *See McBrice v. Senkowski*, No. 98CV8663, 2002 WL 523275, at *4 n.2 (construing claim of *pro se* petitioner alleging verdict was against the weight of the evidence as challenge to sufficiency of evidence); *Bullard v. Fischer*, No. 02 Civ. 9312, 2003 WL 21040179, at *8 (S.D.N.Y. May 8, 2003) (same).

Under the Due Process Clause of the Fourteenth Amendment, a defendant in a criminal case may be convicted only upon proof beyond a reasonable doubt of every fact necessary to constitute the crime charged.  *See Jackson v. Virginia*, 443 U.S. 307, 315 (1979); *Fiore v. White*, 531 U.S. 225, 228-29 (2001); *In re Whinship*, 397 U.S. 358, 364 (1970); *see also Moore v. Irwin*, 908 F. Supp. 200, 204 (N.D.N.Y. 1995) (Koeltl, J., sitting by designation).  "[T]he *Jackson* inquiry does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit."  *Herrera v. Collins*, 506 U.S. 390, 402 (1993).   In other words, under federal habeas review, in considering a claim that there was insufficient evidence to support a conviction, the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson*, 443 U.S. at 319.

"A defendant challenging the sufficiency of the evidence supporting his conviction bears a 'heavy burden', *United States v. Martinez*, 54 F.3d 1040, 1042 (2d Cir. 1995) (quoting *United States v. Sureff*, 15 F.3d 225, 228 (2d Cir. 1994), because the government receives the benefit of having all permissible inferences drawn in its favor, *id*. (*citing United States v. Nersesian*, 824 F.2d 1294, 1302 (2d Cir. 1987))." *Dixon v. Miller*, 293 F.3d 74, 81 (2d Cir. 2002). "The evidence is not viewed piecemeal, but as a whole...." *United States v. Gonzalez*, 922 F.2d 1044, 1053 (2d Cir. 1991) (citation omitted).

The Appellate Division denied petitioner's claim challenging the weight of the evidence. *See Brown*, 256 A.D. at 1110. To the extent that petitioner's claim should be construed as a sufficiency claim, the claim also fails.

A person is guilty of burglary in the third degree when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein. N.Y.Penal Law § 140.20. Both Phyllis Tassone and Vincent Tassone testified that when they left Tassone's Service Station for the day on August 27, 1993, all of the doors were locked, no windows were broken, the burglar alarm was on, the cash register drawer was left open a little way, and some money was left in the register drawer. (T.231-33 and 263-69). Officer Flynn testified that when he arrived at Tassone's Service Station at approximately 2:13 a.m. on August 28, 1993, he found a broken window in the back of the station. (T.238). He found petitioner inside the building. (T.238). Officer Flynn testified that he took a picture of the cash register at the time of petitioner's arrest which showed the cash register drawer to be "wide open" and empty. (T.242). Flynn identified the picture at trial. (T.242). Officer Cordone testified that he searched petitioner at the scene and found $91.40 sticking out of petitioner's waistband. (T.297-98). Officer Cordone also testified that after

20

petitioner received his Miranda rights, petitioner admitted that he crawled into the station through a window and took the money from the station.  (T.301-02).

While petitioner denied at trial that he intended to take any money when he entered the service station or that he made any admissions to Officer Cordone at the scene, at best petitioner raises an issue of credibility.  Issues of credibility are for the trier of fact to resolve.  *Vera*, 928 F. Supp. at 284 (citation omitted).  A review of the facts in this case shows that there was no error in determining that there was legally sufficient evidence to convict petitioner of the crime of third degree burglary.  Essentially the trier of fact made a factual determination that petitioner entered the service station with the intent of committing a crime therein.  It made a credibility determination when it chose to discount petitioner's explanation that he was only searching for an air hose so that he could fill his bicycle tire.  It is not for this Court, under a legal sufficiency challenge, to reweigh the evidence or make its own factual or credibility determinations.[12]  Based on the evidence viewed in the light most favorable to the prosecution, there was sufficient evidence to convict petitioner of the crime.  To the extent that the Appellate Division's decision on the weight of the evidence challenge can be regarded as a decision on the merits of an insufficient evidence claim, this Court finds that the decision was not contrary to or did not involve an unreasonable application of federal law, nor was it an unreasonable determination of the facts.  Thus petitioner's first claim should be dismissed.

---

[12] This differs from a weight of the evidence review in state court since the state appellate court may "weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony."  *People v. Bleakley*, 69 N.Y.2d 490, 495 (1987) (*citing People ex. rel. MacCracken v. Miller*, 291 N.Y. 55, 62 (1943)).

### 4.  The Sentence Was Harsh and Excessive.

Petitioner claims that his sentence of 20 years to life for a "non-violent class D-felony for burglary in the third degree" was harsh and excessive.  Dkt. No. 1 at 6.  This claim, however, fails to acknowledge the established authority which clearly holds that "[n]o federal constitutional issue is presented where ... the sentence is within the range prescribed by state law."  *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992)(holding that a state prisoner who was sentenced within the limits of the state law does not present a federal constitutional issue for habeas purposes) (citing *Underwood v. Kelly*, 692 F. Supp. 146 (E.D.N.Y. 1988), *aff'd mem.*, 875 F.2d 857 (2d Cir. 1989)); *see also Jackson v. Lacy*, 74 F. Supp.2d 173, 181 (N.D.N.Y. 1999) (McAvoy, C.J.) ("[i]t is well-settled ... that a prisoner may not challenge the length of a sentence that does not exceed the maximum set by state law").

Petitioner was convicted of Burglary in the Third Degree, a class D felony, in violation of New York Penal Law § 140.20 but was also determined to be a persistent felony offender.  Under New York Penal Law, the sentence for a persistent felony offender shall be an indeterminate sentence consisting of a minimum sentence of imprisonment for not less than 15 years nor more than 25 years and a maximum term of life imprisonment.  *See* N.Y. Penal Law §§ 70.00 and 70.10. Petitioner was sentenced to 20 years to life imprisonment, which falls squarely within the range prescribed by state law.  The trial court was within its discretion to impose this sentence, and therefore petitioner fails to raise a federal constitutional issue that warrants habeas relief.  Accordingly, the Court denies petitioner's harsh and excessive sentence claim.

Arguably, this ground could be construed as a claim that the sentence imposed constitutes a violation of the Eighth Amendment to the United States Constitution, which prohibits the

imposition of a sentence that is "grossly disproportionate to the severity of the crime." *Rummel v. Estelle*, 445 U.S. 263, 271, 100 S.Ct. 1133, 1138 (1980).  The Court notes, however, that "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel*, 445 U.S. at 272, 100 S.Ct. at 1138; *see Harmelin v. Michigan*, 501 U.S. 957, 995, 111 S.Ct. 2680, 2701-02 (1991) (Eighth Amendment only forbids sentences which are "grossly disproportionate" to the crime).  A sentence of imprisonment which is within the limits of a valid state statute is not cruel and unusual punishment in the constitutional sense.  *See White*, 969 F.2d at 1383; *Lou v. Mantello*, No. 98-CV-5542, 2001 WL 1152817, at *13 (E.D.N.Y. Sept. 25, 2001); *see also Richardson v. Artuz*, No. 97-CV-2128 (JG), 2004 WL 556688 at *22 (E.D.N.Y. Mar. 22, 2004) (because a state prisoner's sentence fell within the range authorized by New York Penal Law, it "does not qualify for consideration as excessive under the Eighth Amendment")..

### 5.  The Trial Court Erred in Finding Petitioner to Be a Persistent Felony Offender.

Petitioner argues that his rights were violated when he was determined, after retrial, to be a persistent felony offender, based upon findings made at a hearing held after his first trial.  On March 2, 1994, petitioner was found guilty of burglary in the third degree and several misdemeanors.  Judge Mulroy, the state trial judge, held a persistent felony offender hearing in accordance with N.Y. Criminal Procedure Law (N.Y.C.P.L.) § 400.20.  At the completion of the hearing, Judge Mulroy determined that petitioner was a persistent felony offender as defined by N.Y. Penal Law §70.10 and sentenced petitioner accordingly.  *See* Transcript, Persistent Felon Hearing, Plea and Sentence at 14-16.  Subsequently petitioner's conviction for third degree

23

burglary was overturned on appeal and remanded for retrial.  As part of the appeal from the first trial, petitioner challenged the trial court's determination that he was a persistent felony offender. Neither the Appellate Division, Fourth Department nor the Court of Appeals explicitly addressed this challenge.

Petitioner was retried on the burglary count before Judge Mulroy and on June 27, 1996, following a jury trial, was again convicted on this count.  At sentencing, Judge Mulroy chose to rely on the findings of the persistent felony offender hearing held at the conclusion of the first trial and again adjudged petitioner to be a persistent felony offender and sentenced him accordingly. Petitioner argues that before Judge Mulroy made the persistent felony offender determination after the second trial, the court should have conducted a **new** persistent felony offender hearing.[13]

Habeas relief is available to a state prisoner "only on the ground that he is in custody in violation of the constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  "[I]t is not the province of a federal habeas court to re-examine state court determinations on state law." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  "[F]ederal habeas corpus review of State criminal proceedings is limited to those errors of a constitutional magnitude which have denied a petitioner the procedural fairness required by the Fourteenth Amendment." *Mitchell v. Smith*, 481 F. Supp. 22, 25 (E.D.N.Y. 1979), *aff'd*, 633 F.2d 1009 (2d Cir. 1980), *cert. denied*, 499 U.S. 1088 (1981) (*citing Carafas v. LaVallee*, 391 U.S. 234 (1968); *Mapp v. Warden*, 531 F.2d 1167 (2d Cir. 1976), *cert. denied*, 429 U.S. 982 (1976).  "Further, State Court evidentiary rulings normally do not rise to a constitutional level so as to be redressable in a federal habeas corpus proceeding absent a

---

[13]   A persistent felony offender hearing is an evidentiary hearing held by state court to determine whether defendant should be adjudicated a persistent felony offender.  N.Y. CPL § 400.20.

showing that the challenged rulings infringed on one of a petitioner's specific constitutional rights." *Mitchell*, 481 F. Supp. at 25 (*citing Manning v. Rose*, 507 F.2d 889, 892 [6th Cir. 1974]).

The sentencing process itself must satisfy the requirements of the due process clause. *Gardner v. Florida*, 430 U.S. 349, 358 (1977).  A state sentencing decision is also cognizable on federal habeas review if a legal error "resulted in the improper exercise of the sentencer's discretion and thereby deprived the petitioner of his liberty."  *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987), *cert. denied*, 484 U.S. 1014 (1988) (*citing inter alia Hicks v. Oklahoma*, 447 U.S. 343, 346 [1980]).

Petitioner seems to allege a due process violation because he did not receive a new persistent felony offender hearing following retrial before the same state court judge.  State court Judge Mulroy, who presided over both of petitioner's trials as well as petitioner's persistent felony offender hearing, chose to rely on the findings adduced at the persistent felony offender hearing held at the conclusion of the first trial when he again determined petitioner to be a persistent felony offender after retrial.  At the sentencing hearing held after petitioner's second trial, Judge Mulroy stated:

> I am prepared to sentence [petitioner] as a persistent felony offender based on his prior conviction and the findings that I made on that prior conviction, even though the Appellate Division sent it back.
> I saw nothing in the decision [of the Appellate Division] to disturb the persistent finding of this man.  I intend to sentence him to that Burglary Third as a persistent felony offender without the need for a hearing, any new finding, because nothing has changed. ...[14]

---

[14] At this point, the Assistant District Attorney interjected that when the appellate court overturned the burglary conviction, "the Court finding persistent wasn't overturned, and the issue was raised on the initial appeal, and that was affirmed."  Sentence Minutes dated December 13, 1996 at 12.

> That is why I see no need to have another hearing to find the
> exact same things that were found at the first hearing, since there
> was no evidence at the [second] trial that would change anything,
> and plus I can't believe that there is going to be anything else
> brought up that would change or modify the first finding other than
> we have two more convictions or two more violent felony offenses.

Sentence Minutes dated December 13, 1996 at 11-12.

This Court is satisfied that the decision not to hold a new hearing was within the discretion of Judge Mulroy, particularly since Judge Mulroy presided over the first persistent felony offender hearing. Moreover, at the first hearing Judge Mulroy made the findings required by N.Y.C.P.L. § 400.20 and therefore complied with the state statutory requirements. Additionally, petitioner does not allege that he would have introduced any new information or evidence at a renewed hearing that would have changed the outcome of the first hearing. Petitioner has made no showing that his procedural rights under state law have been abridged and has pointed to no violation of his constitutional rights, and therefore this claim is denied.

### 6. The Trial Court Erred in Its *Sandoval* Ruling.

Petitioner asserts that the trial court's *Sandoval* ruling allowing the prosecution to cross-examine petitioner regarding his prior criminal convictions and a perjured employment application was an abuse of discretion. Dkt. No. 1 at 7-8.

Habeas relief is available to a state prisoner "only on the ground that he is in custody in violation of the constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "[I]t is not the province of a federal habeas court to re-examine state court determinations on state law." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A *Sandoval* hearing is an evidentiary hearing held by the state court to determine whether, if the defendant testifies, his prior convictions or bad acts may be admitted to impeach his credibility. *See People v. Sandoval*, 34 N.Y.2d 371, 374 (1974).

26

As a general rule, "admission of prior convictions for the purpose of impeaching the defendant has been characterized as evidentiary in nature and is therefore not redressable in a federal habeas corpus proceeding absent a showing that the particular errors were of constitutional magnitude." *Jenkins v. Bara*, 663 F. Supp. 891, 899 (E.D.N.Y.1987) (citing cases); *see, e.g., Bernard v. Stinson,* 1998 WL 40201,*2 (S.D.N.Y.1998) ("Generally, erroneous evidentiary rulings by a state trial court do not constitute a basis upon which a writ [of] habeas corpus may be issued."); *Mitchell v. Smith*, 481 F. Supp. 22, 25 (E.D.N.Y.1979), aff'd, 633 F.2d 1009 (2d Cir.1980), *cert. denied*, 499 U.S. 1088 (1981).

Petitioner has raised no errors of constitutional magnitude arising from the *Sandoval* hearing and therefore this claim is not reviewable in the context of a federal habeas petition.

### 7. The Trial Court Committed Misconduct by Interjecting Itself into the Trial.

Petitioner claims that the trial court committed misconduct when it interjected itself into the proceedings.  In *Daye v. Attorney General*, 712 F.2d 1566, 1572 (2d. Cir. 1983), *cert. denied*, 464 U.S. 1048 (1984), the Second Circuit stated:

> A trial judge's intervention in the conduct of a criminal trial would have to reach a significant extent and be adverse to the defendant to a substantial degree before the risk of either impaired functioning of the jury or lack of the appearance of a neutral judge conducting a fair trial exceeded constitutional limits.

A state trial judge would have to engage in conduct that was "significantly adverse to the defendant" before it violated the defendant's right to due process which would in turn permit federal judicial intervention.  *Garcia v. Warden*, 795 F.2d 5, 8 (2d Cir. 1986); *see also Gayle v. Scully*, 779 F.2d 802, 811 (2d Cir. 1985), *cert. denied*, 479 U.S. 838 (1986) (state trial court has the "right, indeed frequently even the duty" to intervene at trial "in an effort to clarify and to avoid

confusion).

Petitioner takes exception to a line of questioning by the trial court at the end of

petitioner's second cross-examination.  The line of questioning by the Court was as follows:

> THE COURT:  Any questions?  I have one.  You indicated that you
> climbed in.  Your were on bicycle, you looked in the window and the
> window gave way, correct?
>
> MR. BROWN: Yes.
>
> THE COURT: If this is accurate, tell me.  You used the bicycle to climb in the
> window, kind of step on the bike get into the window so you wouldn't get
> scratched up?
>
> MR. BROWN: I believe that's what I did.
>
> THE COURT: Then you were in the gas station.  Did you ever come out of the gas
> after that before the police got to you?
>
> MR. BROWN: No.
>
> THE COURT: No. Once you got in the gas station, you stayed in there until the
> police caught you?
>
> MR. BROWN: That's correct.
>
> THE COURT: Okay.  How do you explain your bike being found on the other side
> of the gas station, sir?
>
> MR. BROWN: I have no idea how it got there.

(T. 361-62).

The Court's questioning of petitioner was brief and served to clarify petitioner's testimony

and to assist the jury in understanding the evidence. A review of the trial transcript does not reveal

that the trial court intervened in a manner that was "significantly adverse" to petitioner or

committed error of a constitutional dimension.  This claim is dismissed.

28

**WHEREFORE**, it is hereby

**ORDERED**, that petitioner's Motion to Amend (Dkt. No. 24) is **DENIED**, and it is further

**RECOMMENDED**, that the Petition be **DENIED and DISMISSED**, and it is further

**ORDERED**, that the Clerk serve a copy of this order upon the parties hereto by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 [2d Cir. 1989]); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: September 22, 2004
       Syracuse, New York

George H. Lowe
United States Magistrate Judge